JOHN BRADY et al., Respondents, *v.* CASSIUS H. READ, Appellant.

Where a release is unambiguous in its terms, oral evidence is inadmissible to show that it was intended to embrace other matters not specified therein.

(Argued October 26, 1883; decided November 27, 1883.)

THIS action was brought to recover for a quantity of coal and a number of empty oil barrels which the complaint alleged, plaintiffs sold to defendant.

Prior to the 27th day of September, 1877, the plaintiff, John Brady, was the lessee of certain property situated in the city of Brooklyn, known as "the Atlantic Oil Refining Works," and prior to that time, either alone or with the other plaintiffs, he had carried on the business of refining oil at that place. On that day he entered into an agreement with the defendant, whereby the latter agreed to furnish all the capital which might be required to carry on the business of refining oils at that place, "or to cause the same to be transacted in a good business-like manner at all times that the same can be run with profit, that the said Read will pay all rent and other expenses of every kind and nature which may be incurred therein, and to account to said party of the second part for all net profits, if any, and pay the one-half thereof to said party of the second part, monthly, until the 1st day of January, 1882," and Brady agreed "to allow the said party of the first part to carry on said business, or cause the same to be transacted, as in the best judgment of the party of the first part he, said Read, may deem advisable for the term aforesaid, but without any charge or liability as against said Brady," and that during the term he, Brady, would not sell or assign "the goods, chattels, tools, utensils and machinery" then belonging to the business, or any part thereof, without the written consent of Read. The property in question was on hand when defendant took possession, and was used by

him. The defendant claimed, among other things, that the property in question was purchased and paid for, and that plaintiffs executed a release in full of these and all other claims. As to the purchase and alleged release the court here say : " Brady did not by the agreement sell any personal property to Read, but Read, by implication, was to have the use of the personal property mentioned in the agreement. That personal property was clearly such only as was permanently used in carrying on the business, such as tanks, implements, machinery, etc. It does not appear to have included the coal, and barrels which were not kept for use, but which were consumed or disposed of by use. The personal property covered by the agreement was the same which Brady agreed not to sell or assign during the term, and could not have included personal property which was not to be kept during the term, but which was on hand only to be used up in the business.

Brady's evidence, which was submitted to and believed by the jury, showed that a few days after the agreement was made, he sold the coal and barrels on behalf of the plaintiffs to the defendant for an agreed price, and this showed, too, that the coal and barrels were not included or covered by the prior agreement. They were an expense in the business which the defendant was bound to incur and defray, and were all used up by him within two or three weeks after the sale of them to him.

Nothing occurred between the parties subsequently to discharge the defendant from his liability to pay for the property thus purchased.

On the 16th day of February, 1878, Brady executed an instrument under seal, in which in consideration of one dollar he relieved Read from all charges or claims founded on the agreement of September 27, 1877, or for the breach of any covenants contained therein, and declared that Read had acted fairly with him in every thing relating to that agreement, and the carrying out of the same, and that every matter embraced in that agreement had that day been fully settled and adjusted between them. The instrument also recited that Read had that day purchased from him, Brady, all the property mentioned in that agreement, and had become possessed of the same. If Read then purchased all the property mentioned in that agree-

ment, the coal and barrels were certainly not covered by that agreement, as they had before that day been used up, and thus could not then have been the subject of purchase. That release did not cover the purchase-price of the coal and barrels. Plaintiffs' claim for them was not founded on that agreement; nor was it for the breach of any covenant therein contained. It had no connection with the agreement, but it was for personal property subsequently sold to the defendant.

The coal and barrels were not included in the bill of sale executed by the plaintiff to the defendant on the 16th day of February, 1878, because they were not then in existence, and there is nothing in the terms of this bill of sale which covers that property, or the claim of the plaintiffs for the purchase-price thereof."

The counsel for the defendant asked a witness this question: " Will you be kind enough to state what took place in reference to the general release which I now hand you, about the execution of that paper ? " This was objected to on the part of the plaintiffs, and the objection was sustained by the court, on the ground that every thing was merged in the written agreement, and that parol evidence was not competent to change the force of it. Defendant's counsel excepted to the ruling. The court say : " The release is not ambiguous in its terms and its scope could not be enlarged by parol evidence. The plain language used must be held to express the intent of the parties, and parol evidence was incompetent to show a different intent."

The following questions were also held to have been properly excluded : " What was said as to why a general release should not be given on the 16th of February ? " " Why was the coal and barrels not entered into this agreement on the 16th of September, 1878 ? "

The court say : " It does not appear how it was important or material to show what was said as to why a general release should not be given. A release was given, and that speaks for itself. It was not stated how it could be important or material to show why the coal and barrels were not included in the agreement mentioned, and it does not appear that at that date

any agreement between the parties was made. It is clear that they were not included in any agreement, and if any competent or material evidence could have been elicited by these questions it should have been disclosed, so that the court could have known what it was and then made an intelligent ruling. It is sufficient now that we cannot perceive any legitimate purpose for which these questions could have been asked."

*Samuel Hand* for appellant.

*Anthony Barrett* for respondents.

EARL, J., reads for affirmance.
All concur.
Judgment affirmed.